IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**MARIBEL MONTALVO RIOS,**

    Plaintiff

        v.     **Civil No. 10-1293 (SEC)**

**MUNICIPALITY OF GUAYNABO, ET AL.,**

    Defendants

**OPINION and ORDER**

Pending before this Court is Co-Defendant Municipality of Guaynabo's ("Co-Defendant" or "Municipality") Motion to Dismiss (Docket # 23) and Plaintiff's opposition thereto (Docket # 29). Upon reviewing the filings, and the applicable law, Co-Defendant's motion is **GRANTED in part and DENIED in part**.

**Factual Background**

On April 8, 2010, Plaintiff[1] filed suit against Co-defendant, among other defendants, under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§2000e et seq.), and applicable state law, alleging sexual harassment and retaliation. According to the complaint, between January and August 2009 Plaintiff was subjected to a pattern of unwanted sexual advances from Carmelo Correa ("Correa"), also a co-defendant in this action, and at the time, Chief Commissioner of the Police Department for the Municipality of Guaynabo.[2] On August 21, 2009, Plaintiff filed an internal harassment complaint with the Human Resources Office of the Municipality of Guaynabo. She alleges that after filing said complaint, the Municipality retaliated against her.

---

[1] Plaintiff was an Executive Officer for the Purchases and supplies Division of the Police Department.

[2] The detailed and extensive account of the alleged harassment is included in the complaint. See Docket # 1.

On July 16, 2010, Co-Defendant Municipality of Guaynabo moved for dismissal, arguing that Plaintiff failed to state claims for sexual harassment and retaliation. Docket # 23. Plaintiff opposed (Docket # 29), Co-Defendant replied (Docket # 33), and Plaintiff sur-replied (Docket # 37).

**Standard of Review**

*FED. R. CIV. P. 12 (b)(6)*

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted. First Med. Health Plan, Inc. v. CaremarkPCS Caribbean, Inc., 681 F. Supp. 2d 111, 113-114 (D.P.R. 2010) (citing Fed.R.Civ.P. 12(b)(6)). , When deciding a motion to dismiss under Rule 12(b)(6), the court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." First Med. Health, 681 F. Supp. 2d at 114 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). In so doing, the court construes the complaint in the light most favorable to the plaintiff, accept as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Id. (Citing Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008)); see also Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 34 (1st Cir. 2002); Correa Martinez v. Arrillaga-Belendez, 903 F.2d 49, 51 (1st Cir. 1990). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." First Med. Health, 681 F. Supp. 2d at 114 (citing Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009)). Specifically, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Iqbal, 129 S.Ct. at 1949. As such, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]'–'that the pleader is entitled to relief.'" First Med. Health, 681 F. Supp. 2d at 114 (citing Iqbal, 129 S. Ct. at 1950 (quoting FED.R.CIV.P. 8(a)(2)).

**CIVIL NO. 10-1293 (SEC)**                                                                                   Page 3

In sum, when passing on a motion to dismiss the court must follow two principles: (1) legal conclusions masquerading as factual allegations are not entitled to the presumption of truth; and (2) plausibility analysis is a context-specific task that requires courts to use their judicial experience and common sense. Id. (citing Iqbal, 129 S. Ct. at 1950). In applying these principles, courts may first separate out merely conclusory pleadings, and then focus upon the remaining well-pleaded factual allegations to determine if they plausibly give rise to an entitlement to relief. Id. (Citing Iqbal, 129 S. Ct. at 1950).

The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F. 3d 301, 305(1st Cir. 2008). Courts "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Id. at 305-306. However, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)); Buck v. American Airlines, Inc., 476 F. 3d 29, 33 (1st Cir. 2007); see also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999). Thus Plaintiffs must rely in more than unsupported conclusions or interpretations of law, as these will be rejected. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

Therefore, "even under the liberal pleading standards of Federal Rule of Civil Procedure 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Rodríguez-Ortíz v. Margo Caribe, Inc., 490 F.3d 92 (1st Cir. 2007) (citing Twombly, 127 S. Ct. at 1965). Although complaints do not need detailed factual allegations, the "plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that a defendant has acted unlawfully." Twombly, 127 S. Ct. At 1965; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A plaintiff's obligation to "provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. At 1965. That is, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true." Parker v. Hurley, 514 F. 3d 87, 95 (1st Cir. 2008).

**Applicable Law and Analysis**

*Harassment claims*

Co-Defendant alleges that dismissal of Plaintiff's sexual harassment claims is warranted because she failed to act with reasonable care to take advantage of the Municipality's safeguards and prevent harm that could have been avoided. On this point, Co-Defendant argues that the *Faragher-Ellerth* defense forecloses a Title VIII claim against them insofar as an employer is not liable when (1) the employer's "own actions to prevent and correct harassment were reasonable" and (2) "the employee's actions in seeking to avoid harm were not reasonable." Chaloult v. Interstate Brands Corporation, 540 F.3d 64, 66 (1st Cir. 2008) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998) and Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 765 (1998).

Plaintiff, in opposition, contends that the *Faragher-Ellerth* defense is not available to Co-Defendant since "an employer's liability for a hostile work environment claim depends on the harasser's employment status relative to the victim's." See Torres-Negron v. Merck & Company, 488 F.3d 34 (1st Cir. 2007). She points out that since Correa is the highest ranking

**CIVIL NO. 10-1293 (SEC)**                                                                                                    Page 5

officer in the Police Department, he is considered an alter ego or proxy of the Municipality, and as a result, Co-Defendant is automatically liable for his conduct.[3]

In <u>Faragher</u>, the U.S. Supreme Court held that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." <u>Faragher</u>, 524 U.S. at 2292-93. Thus an employer is liable for unlawful harassment whenever the harasser is of a sufficiently high rank to fall "within that class ... who may be treated as the organization's proxy." <u>Faragher</u>, 524 U.S. at 2284. Although the employer has no affirmative defense available "when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment ... when no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence." <u>Id.</u> at 2293. This defense "comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." <u>Id.</u> As such, Plaintiff's allegation that the aforementioned defense is inapplicable to the case at bar fails.

Co-Defendant's argument that Correa was not an alter ego of the Co-Defendant because he was not a high ranking officer is also unpersuasive. More so considering that in his answer to the complaint, Correa admits that he was the highest ranking official in the Police Department of the Municipality of Guaynabo. <u>See</u> Docket 21 ¶18. Accordingly, this Court finds that Correa is an alter ego of the Municipality, of sufficiently high rank as defined in <u>Faragher</u>. Correa was,

---

[3] In its reply, Co-Defendant contests that the highest ranking officer is the Mayor, and that Plaintiff did not plead that the Mayor has delegated certain functions to the Commissioner which could otherwise grant him "high-rank" authority. <u>See</u> Docket 33 ¶ 3. Notwithstanding, Plaintiff notes that the Municipality did not dispute Correa's high ranking status as Police Commissioner at the time of the alleged harassment incidents. <u>See</u> Docket 37 ¶ 2.

**CIVIL NO. 10-1293 (SEC)**                                                                                      Page 6

in fact, in a position where he was construed as the Municipality's proxy. As such, Co-Defendant must show that it exercised reasonable care to prevent and correct any sexually harassing behavior, and that Plaintiff failed to take advantage of the internal mechanisms available in this type of case.

Plaintiff does not allege that the Municipality lacked an anti-harassment policy. Instead, she argues that the Municipality's proceedings following her complaint were procedurally defective. After reviewing the complaint, this Court finds that the Municipality employed reasonable care to prevent sexual harassment in general, and acted promptly when Plaintiff filed her claim, to wit, a hearing was held and Correa subsequently resigned. As such, the first prong of the *Faragher/Ellerth* defense is met. Nevertheless, we also believe that Plaintiff took advantage of the internal grievance procedure provided by the Municipality, albeit a year after the alleged acts began. This delay does not, however, change the fact that she informed the Municipality about the alleged sexual harassment, and fully took advantage of its internal procedures to remedy the situation. Therefore, Co-Defendant did not satisfy the second prong of the *Faragher/Ellerth* defense.

Based on the foregoing, Co-Defendant's request for dismissal of Plaintiff's sexual harassment claims is **DENIED**.

*Retaliation claims*

Co-Defendant also alleges that Plaintiff's pleadings regarding retaliation are insufficient under the heightened Iqbal pleading standard, insofar as they are "conclusory, speculative [and] a mechanical recitation of the elements of a cause of action." Docket # 23, p. 6.

In her complaint, Plaintiff alleges retaliation under Title VII, 42 U.S.C. § 2000e3(a), which seeks to prevent employers from retaliating against an employee for attempting to enforce rights under Title VII. See DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir.2008). Said retaliation provision makes it illegal "for an employer to discriminate against any of his employees ...

because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under this subchapter. 42 U.S.C. § 2000e-3(a).

Unless direct evidence is available, Title VII retaliation claims may be proven by using the burden-shifting framework set forth down in McDonnell Douglas Corp. v.Green, 411 U.S. 792 (1973). In order to establish a *prima facie* case of retaliation, the plaintiff must show that (1) she engaged in protected activity; (2) the employer was aware of that activity; (3) she suffered an adverse employment action and (4) there was a causal connection between the protected activity and the adverse employment action. Id.; see also Gu v. Boston Police Department., 312 F.3d 6, 14 (1st Cir. 2002).

The allegations set forth by Plaintiff, accepted as true, are sufficient to show that she engaged in a protected activity (filed a sexual harassment complaint)[4] and that the employer was aware of that activity. Notwithstanding, Co-Defendant argues that the complaint is devoid of facts showing that she suffered adverse employment actions after engaging in the protected conduct. Twombly, 127 S. Ct. at 1967. This Court agrees.

The First Circuit has ruled that establishing a *prima facie* case of retaliation is a "relatively light burden." Mariani-Colon v. Dep't of Homeland Sec., 511 F.3d 216, 224 (1st Cir.2007). Notwithstanding, a plaintiff is only bound to succeed on a claim of retaliation if he proves that "the employer took a materially adverse employment action against him." Blackie v. Maine, 75 F.3d 716, 725 (1st Cir.1996); Ramos-Biaggi v. Martinez, 98 F.Supp.2d 171, 178 (D.P.R.2000). A "material change" is construed such as to change the conditions of the plaintiff's employment. Gu, 312 F.3d at 14. An "adverse employment action" is met when "the employer's challenged actions result in a work situation 'unreasonably inferior' to the norm for the position." Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 766 (1st Cir.2010) (citing Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218, 1220 (1st Cir.1989) (explaining

---

[4] Reporting sexual harassment or initiating a charge of sexual harassment is a protected activity under Title VII. Dressler v. Daniel, 315 F.3d 75, 78 (1st Cir.2003).

that the factfinder must "canvass the specific ways in which the plaintiff's job has changed" and "determine whether the employee has retained duties, perquisites and a working environment appropriate for his or her rank and title."). Morevoer, "Title VII's anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington Northern and Santa Fe Ry. Co. v. White, 548 US. 53, 67 (2006). That is, the primary objective of the antiretaliation provision under Title VII is avoiding harm to employees. Crawford v. Metropolitan Govt. of Nashville, 129 S. Ct. 846 (2009). "Determining whether an action is materially adverse necessarily requires a case-by-case inquiry ... that must be cast in objective terms." Blackie, 75 F.3d at 725-26.

Title VII's retaliation provision also requires a showing that a reasonable employee would have found employer's challenged action materially adverse, *i.e.* that the challenged action could well dissuade a reasonable employee from protected conduct. Burlington, 548 U.S. at 67. Furthermore, the Supreme Court has recently broadened the scope of the antiretaliation provision, ruling that it "extends beyond workplace-related or employment-related retaliatory acts and harm." Id. at 67. Said harm, however, must not be trivial. Id at. 68.

Termination clearly constitutes an adverse employment action. Szendrey-Ramos v. First BanCorp, 512 F. Supp.2d 81 (D.P.R. 2007). Other examples of adverse employment actions include failure to timely issue paychecks, failure to provide W-2 forms, and failure to timely pay state and federal taxes. Torres-Negron v. Merck & Company, Inc., 488 F.3d 34, 44 (1st Cir. 2007). The denial of an employee's request for office space could also, under certain circumstances, constitute an adverse employment action. Lockridge, 597 F.3d at 472. So can, for example, the assignment of extra double shifts, removal from a favorable duty, the assignment of an "unusually long" posting where work was "remote and solitary," Valentin-Almeida v. Municipality of Aguadilla, 447 F.3d 85, 97 (1st Cir. 2006), and "acting with great hostility towards plaintiff." Montalvo-Padilla v. University of P.R., 492 F. Supp.2d 36, 42

**CIVIL NO. 10-1293 (SEC)**                                                                                                   **Page 9**

(D.P.R.2007). Context is of pivotal importance, because "the significance of any given act of retaliation will often depend upon the particular circumstances." Burlington, Id. at 69.

In the complaint, Plaintiff sets forth the following alleged retaliatory acts: (1) that, as result of her rejection of his sexual advances, "Correa instructed several policemen to follow her everywhere she went," Docket # 1, ¶ 47; (2) that "the Municipality had determined that it would retaliate against [her] for filing the internal complaint and that the complaint would be decided against her in order to clear the Municipality's name," id. at ¶ 48; (3) that "the hearing was conducted in violation [of] the rules and regulations, and [violated her] procedural due process rights," id. at ¶ 50; (4) that she was "subjected to retaliation as a result of the internal sexual harassment complaint she filed," id. at ¶ 55; (5) after the hearing, "some of her co-workers have mocked [her], made offensive remarks, among others," id. at ¶ 56; (6) that "the Mayor began to pressure [her] to accept a transfer to another department," id. at ¶ 57; and (7) that she "felt retaliated against for filing a sexual harassment claim against the Commissioner," id. at ¶58.

This Court first notes that Plaintiff's averments that she was retaliated against for filing a harassment complaint (Docket #1, ¶¶ 55 & 58) are formulaic recitations of her cause of action that lack factual support, and thus, fail under Iqbal. Additionally, Plaintiff sets forth conclusory statements regarding the Municipality's alleged intent to retaliate against her, without any facts that support such position.[5] Moreover, although Plaintiff alleges that the Mayor began to pressure her to accept a transfer to a position that she did not qualify for, there are no factual allegations as to whether said putative transfer involved a demotion, a change in salary or employment benefits that would otherwise change her current employment situation for the

---

[5] The fact that the examiner that presided over the hearing is an employee of the Municipality does not provide factual support to this allegation. All agencies and municipalities' internal procedures are handled by their own personnel. Any allegation regarding the validity of the proceedings must be addressed by the state courts.

**CIVIL NO. 10-1293 (SEC)**                                                                                      Page 10

worse, or whether she was effectively transferred.[6] As a result, this cannot be construed as an adverse employment action.

Similarly, Plaintiff's allegations regarding her co-workers actions are insufficient. Courts have distinguished between rudeness and ostracism, on one side of the spectrum, and pervasive harassment on the other, finding that rudeness or ostracism, by itself, is insufficient to support a hostile work environment claim and that severe or pervasive harassment is actionable. Noviello v. City of Boston, 398 F.3d 76, 89 (1st Cir. 2005). For purposes of a Title VII retaliation claim, menacing looks, name calling, exclusion from meetings, or being shunned by co-workers does not constitute an adverse employment action. Davis v. Verizon Wireless, 389 F. Supp. 2d 458 (W.D.N.Y. 2005). While verbal abuse might at times be sufficiently severe and chronic to constitute an adverse employment action, such behavior, without more, hardly rises to the level of actionable retaliation. Brennan v. City of White Plains, 67 F. Supp. 2d 362, 374 (S.D.N.Y. 1999).

The very act of filing a charge against a coworker will invariably cause tension and result in a less agreeable workplace, since the target of the complaint likely will have coworker-friends who come to his defense, while other coworkers will seek to steer clear of trouble by avoiding both parties. Noviello, 398 F.3d at 93. However, albeit unpleasant, "such behavior should not be seen as contributing to a retaliatory hostile work environment." Id. The complaint does not show that Plaintiff here was submitted to a "steady stream of abuse" sufficient to amount to a retaliatory hostile work environment under Title VII. Even more, Correa voluntarily resigned, and there were no additional incidents on this front. Moreover, Plaintiff does not identify the names and specific instances when these alleged incidents occurred, which also fails to satisfy Iqbal's requirements, and makes it impossible to determine the severity and nature of the alleged comments.

---

[6] It seems that Plaintiff still works at the Police Department whereas Correa resigned as Chief.

Finally, this Court considers the "persecution" allegation brought forth by Plaintiff. Placing an employee under constant surveillance could be evidence of retaliation. <u>Fercello v. County of Ramsey</u>, 612 F.3d 1069, 1081 (8th Cir. 2010). Notwithstanding, Plaintiff does not provide a factual basis for her allegation, such as the times and places where she was allegedly followed by policemen. Additionally, there is no evidence to show that Correa instructed any police officers to follow her. Her averments on this front are conclusory allegations based on mere speculation, which are insufficient to survive dismissal under <u>Iqbal</u>.

Accordingly, Plaintiff's retaliation claims are **DISMISSED with prejudice**.

**Conclusion**

In light of the above, Co-Defendant's motion to dismiss is **GRANTED in part and DENIED in part.** Plaintiff's retaliation claims are **DISMISSED with prejudice**. Partial Judgment will be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 19th day of October, 2010.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge