IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**MARIBEL MONTALVO RIOS,**

    Plaintiff

           v.     **Civil No. 10-1293 (SEC)**

**MUNICIPALITY OF GUAYNABO, ET AL.,**

    Defendants

**OPINION and ORDER**

Pending before this Court is Plaintiff Maribel Montalvo-Rios' ("Plaintiff") motion for reconsideration (Docket # 42) and Co-Defendant Municipality of Guaynabo's ("Municipality") motion to clarify and for reconsideration (Docket # 47). Both parties filed their respective oppositions and replies. Dockets ## 56, 57, 63 & 66. Also pending before us is the United States of America's request to participate as amicus curiae in support of Plaintiff's motion for reconsideration and related filings. Dockets ## 44, 45, 58 & 59. Upon reviewing the filings, and the applicable law, the USA's request is **GRANTED**, and both parties' motions are **GRANTED in part and DENIED in part**.

**Factual Background**

On April 8, 2010, Plaintiff[1] filed suit against the Municipality, among other defendants, under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§2000e et seq.), and applicable state law, alleging sexual harassment and retaliation. According to the complaint, between January and August 2009 Plaintiff was subjected to a pattern of unwanted sexual advances from Carmelo Correa ("Correa"), also a co-defendant in this action, and at the time, Chief

---

[1] Plaintiff was an Executive Officer for the Purchases and supplies Division of the Police Department.

**CIVIL NO. 10-1293 (SEC)** Page 2

Commissioner of the Police Department for the Municipality of Guaynabo.[2] On August 21, 2009, Plaintiff filed an internal harassment complaint with the Human Resources Office of the Municipality of Guaynabo. She alleges that after filing said complaint, the Municipality retaliated against her.

On July 16, 2010, the Municipality moved for dismissal, arguing that Plaintiff failed to state claims for sexual harassment and retaliation under Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). Docket # 23.  Plaintiff opposed (Docket # 29), the Municipality replied (Docket # 33), and Plaintiff sur-replied (Docket # 37). This Court partially granted the Municipality's request, and Plaintiff's retaliation claims were dismissed with prejudice. Docket # 38. Thereafter, the parties filed the motions now before our consideration.

**Standard of Review**

FED. R. CIV. P. 59 (e) allows a party, within twenty-eight (28) days of the entry of judgment, to file a motion seeking to alter or amend said judgment. The rule itself does not specify on what grounds the relief sought may be granted, and courts have ample discretion in deciding whether to grant or deny such a motion. Venegas-Hernández v. Sonolux Records, 370 F.3d 183, 190 (1st Cir. 2004) (citations omitted).  In exercising that discretion, courts must balance the need for giving finality to judgments with the need to render a just decision. Id. (citing Edward H. Bolin Co. v. Banning Co., 6 F.3d 350, 355 (5th Cir. 1993)). Despite the lack of specific guidance by the rule on that point, the First Circuit has stated that a Rule 59(e) motion "must either clearly establish a manifest error of law or must present newly discovered evidence." F.D.I.C. v. World Univ., Inc., 978 F.2d 10, 16 (1st Cir. 1992) (citing Fed. Deposit Ins. Corp. v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986)).  Rule 59(e) may not, however, be used to raise arguments that could and should have been presented before judgment was

---

[2] The detailed and extensive account of the alleged harassment is included in the complaint. See Docket # 1.

**CIVIL NO. 10-1293 (SEC)**                                                                                       Page 3

entered, nor to advance new legal theories. Bogosonian v. Woloohojian Realty Corp., 323 F.3d 55, 72 (1st Cir. 2003).

**Applicable Law and Analysis**

*Plaintiff's motion for reconsideration*

Plaintiff moves for reconsideration, arguing that this Court erred in applying the *Faragher* defense in the present case. Specifically, she contends that insofar as Correa is the alter ego/proxy of the Municipality, it is strictly liable for Correa's illegal conduct. In the alternative, she argues that *Faragher* establishes an affirmative defense that must be asserted and properly proven by the defendant, and the Municipality has not done so in this case. Plaintiff further contends that the allegations regarding retaliation are sufficient to survive dismissal at this stage. On this point, she also requests leave to amend the complaint to supplement her allegations regarding the alleged surveillance ordered by Correa.

In opposition, the Municipality avers that Correa is not its alter ego or proxy, and thus the *Faragher* defense applies to the present case. Even so, they posit that "in the same way that Plaintiff alleged that the record was too undeveloped for the Court to make factual determinations regarding Defendant's affirmative defense under *Faragher*, the record was not sufficiently developed for the Court to make final determinations regarding Correa's status as the Municipality's proxy." Docket # 56, p. 7. The Municipality further argues that Plaintiff's retaliation claims were properly dismissed since she failed to satisfy the pleading standard set forth in *Iqbal*.

*Municipality's motion to clarify and for reconsideration*

In its motion, the Municipality requests that this Court's finding that Correa is its alter ego or proxy was premature insofar as it requires a fact specific inquiry and the complaint failed to set forth sufficient facts regarding the scope of Correa's authority within the Municipality. They further contend that the Court erroneously held that the Municipality failed to establish the second prong of the *Faragher* defense, *i.e.*, that Plaintiff's actions in seeking to avoid harm

were unreasonable. According to the Municipality, Plaintiff's unexplained seven month delay in informing about Correa's alleged harassing behavior is not reasonable. Lastly, the Municipality contends that discovery in this case is needed in order to resolve whether Correa is its alter ego or proxy and whether Plaintiff's conduct was reasonable under *Faragher*. As such, they aver that this Court should have denied the motion to dismiss and ordered the continuation of discovery.

In opposition, Plaintiff argues that pursuant to the applicable law and Correa's own admission, he is an alter ego or proxy of the Municipality, and this factual determination cannot be revisited at the motion for reconsideration stage. Even so, she contends that the complaint sets forth sufficient factual averments to support the conclusion that Correa is an alter ego of the Municipality. She posits that, as a result, *Faragher* is not applicable to the present case.

*Harassment claims*

As explained in our prior Opinion and Order, in Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993), the Supreme Court held that a corporation is vicariously liable for the harassment of its President "who was indisputably within that class of an employer organization's officials who may be treated as the organization's proxy." Thereafter, in Faragher v. City of Boca Raton, 524 U.S. 775, 689 (1998), the Court held that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." Thus an employer is liable for unlawful harassment whenever the harasser is of a sufficiently high rank to fall "within that class ... who may be treated as the organization's proxy." Faragher, 524 U.S. at 677. Even more, "an owner, supervisor holding a 'sufficiently high position 'in the management hierarchy,' proprietor, partner, or corporate officer may also be treated as a corporation's proxy." Id. at 789-790 (citations omitted).

Therefore, vicarious liability automatically attaches and an employer has no affirmative defense available either when the harasser supervisor is within that class of an organization's

employer that may be treated as the organization's proxy, or "when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment..." Faragher, 524 U.S. at 808. Absent either of these situations, however, a defending employer may raise an affirmative defense to liability or damages, by showing "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id.; see also Johnson v. West, 218 F.3d 725, 730 (7th Cir. 2000). If the employer shows the foregoing, the *Faragher* defense forecloses a Title VIII claim against the employer. Chaloult v. Interstate Brands Corporation, 540 F.3d 64, 66 (1st Cir. 2008) (citing Faragher, 524 U.S. at 807 and Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 765 (1998)).

Pursuant to said case law, this district has explained that the *Faragher* defense, "is only triggered when a plaintiff seeks to hold an employer liable under a theory of vicarious liability." Cortes v. Valle, 253 F. Supp. 2d 206, 215 (D.P.R. 2003). That is, it only applies when a plaintiff seeks to hold its employer liable for the actionable conduct of a supervisor in creating a hostile work environment. In contrast, "[w]here the acts alleged to constitute sexual harassment are committed by the president of a corporation, such acts are directly imputable to the corporation."Id. (Citing Faragher, 524 U.S. at 789-90). In such cases, the *Faragher* defense is not available.

The Fifth and Ninth Circuits have similarly cited *Faragher*'s "discussion of Harris for the proposition that 'an individual sufficiently senior in the corporation must be treated as the corporation's proxy for purposes of liability,' which 'constitutes a bar to the successful invocation of the [Faragher/Ellerth] defense . . . .'" Ackel v. Nat'l Communs., Inc., 339 F.3d 376, 384 (5th Cir. 2003) (citing Passantino v. Johnson & Johnson Consumer Products, Inc.212 F.3d 493 (9th Cir. 2000)).

**CIVIL NO. 10-1293 (SEC)** Page 6

Therefore, the issue of whether the president of a corporate defendant is its "proxy is central to the resolution of [a sexual harassment] case because an employer is automatically liable for its proxies' harassment of employees." Ackel, 339 F.3d at 382 (citing Harris, 510 U.S. 17). In Cannabal v. Arabark Corp., 48 F. Supp. 2d 94, 97-98 (D.P.R. 1999), this district "noted that the following factors should be taken into account in deciding whether to hold an individual liable as alter-ego of a corporation: (1) whether the role of the individual was identical to that of the employer; (2) the individual's position in the corporation; (3) whether the individual was always physically there; (4) the individual's control over the employing entity; (5) the individual's decision-making power; and (6) whether the individual left any avenue for employees to object to his conduct. See also Rodriguez v. Econo Supermarket, Inc., 204 F. Supp. 2d 289, 296 (D.P.R. 2002). Thus "[t]he ultimate question, according to the Court in Cannabal, is whether [defendant's administrator] 'was' [defendant corporation], that is, whether [defendant's administrator] was identical to the employer." Econo Supermarket, Inc., 204 F. Supp. 2d at 296.

Considering the above, this Court acknowledges that the *Faragher* defense is unavailable when a defendant's official is an alter ego or proxy of the employer company. Accordingly, Plaintiff's motion for reconsideration on this issue is **GRANTED**, and our conclusions of law regarding this matter in the prior Opinion and Order are **SET ASIDE**. Notwithstanding, at the motion to dismiss stage this Court cannot adequately determine whether Correa is an alter ego or proxy of the Municipality. Considering the factors set forth in *Cannabal*, and after reviewing the complaint, it is unclear is the above mentioned factors are met in this case. Especially considering that the Municipal Police Law provides that the highest authority in the direction of the Municipal Police shall be vested in the mayor, and that the commissioner shall be accountable to the mayor's office. 21 P.R. Laws Ann. tit. 21, § 1064. Additionally, eligibility requirements for all ranks are determined by law, and all vacancies and promotions are effective when the mayor approves the same. Id. The Commissioner shall also determine the placement

**CIVIL NO. 10-1293 (SEC)**                                                                 Page 7

and functions of all members of the Municipal police pursuant to the Uniform Rank System and the need of service. Id. Correa's alleged admissions in his answer to the complaint do not circumvent applicable law regarding this matter. More so considering that Plaintiff's assertion that "Correa [] was the Chief Police Commissioner and the highest ranking official of the Police Department of the Municipality of Guaynabo," and that "[h]e is considered an 'alter ego' of the Municipality of Guaynabo and its Police Department," is an interpretation of the law and fails to set forth specific factual averments that satisfy *Cannabal*'s criteria.[3] As such, this Court cannot properly conclude that Correa is an alter ego or proxy of the Municipality at this time. Consequently, our prior finding that Correa is an alter ego or proxy of the Municipality is **SET ASIDE**, and may be reargued by the parties at a later stage of the proceedings. The Municipality may also affirmatively argue the *Faragher* defense at that time.

Based on the foregoing, the Municipality's request for dismissal of Plaintiff's sexual harassment claims is **DENIED**.

*Retaliation claims*

In her complaint, Plaintiff alleges retaliation under Title VII, 42 U.S.C. § 2000e3(a), which seeks to prevent employers from retaliating against an employee for attempting to enforce rights under Title VII. See DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir.2008). Said retaliation provision makes it illegal "for an employer to discriminate against any of his employees ... because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under this subchapter. 42 U.S.C. § 2000e-3(a).

---

[3] In its reply to the motion to dismiss, the Municipality contested that the highest ranking officer is the Mayor, and that Plaintiff did not plead that the Mayor has delegated certain functions to the Commissioner which could otherwise grant him "high-rank" authority. See Docket 33 ¶ 3. Although the Municipality did not dispute Correa's high ranking status as Police Commissioner at the time of the alleged harassment incidents, this does not in itself equate with Correa acting as proxy or alter ego on of the Municipality. See Docket 37 ¶ 2.

CIVIL NO. 10-1293 (SEC)                                                                                          Page 8

Unless direct evidence is available, Title VII retaliation claims may be proven by using the burden-shifting framework set forth down in McDonnell Douglas Corp. v.Green, 411 U.S. 792 (1973). In order to establish a *prima facie* case of retaliation, the plaintiff must show that (1) she engaged in protected activity; (2) the employer was aware of that activity; (3) she suffered an adverse employment action and (4) there was a causal connection between the protected activity and the adverse employment action. Id.; see also Gu v. Boston Police Department., 312 F.3d 6, 14 (1st Cir. 2002).

This Court held that the allegations set forth by Plaintiff were sufficient to show that she engaged in a protected activity (filed a sexual harassment complaint)[4] and that the employer was aware of that activity. Notwithstanding, we agreed with the Municipality that the complaint was devoid of facts showing that she suffered adverse employment actions after engaging in the protected conduct. Twombly, 127 S. Ct. at 1967.

In the complaint, Plaintiff set forth the following alleged retaliatory acts: (1) that, as result of her rejection of his sexual advances, "Correa instructed several policemen to follow her everywhere she went," Docket # 1, ¶ 47; (2) that "the Municipality had determined that it would retaliate against [her] for filing the internal complaint and that the complaint would be decided against her in order to clear the Municipality's name," id. at ¶ 48; (3) that "the hearing was conducted in violation [of] the rules and regulations, and [violated her] procedural due process rights," id. at ¶ 50; (4) that she was "subjected to retaliation as a result of the internal sexual harassment complaint she filed," id. at ¶ 55; (5) after the hearing, "some of her co-workers have mocked [her], made offensive remarks, among others," id. at ¶ 56; (6) that "the Mayor began to pressure [her] to accept a transfer to another department," id. at ¶ 57; and (7) that she "felt retaliated against for filing a sexual harassment claim against the Commissioner," id. at ¶58.

---

[4] Reporting sexual harassment or initiating a charge of sexual harassment is a protected activity under Title VII. Dressler v. Daniel, 315 F.3d 75, 78 (1st Cir. 2003).

**CIVIL NO. 10-1293 (SEC)**                                                                      Page 9

This Court noted that Plaintiff's averments that she was retaliated against for filing a harassment complaint (Docket #1, ¶¶ 55 & 58) were formulaic recitations of her cause of action that lacked factual support, and thus, failed under <u>Iqbal</u>. Additionally, Plaintiff set forth conclusory statements regarding the Municipality's alleged intent to retaliate against her, without any facts to support such position. Moreover, although Plaintiff alleged that the Mayor began to pressure her to accept a transfer to a position that she did not qualify for, she provided no factual allegations as to whether said putative transfer involved a demotion, a change in salary or employment benefits that would otherwise change her employment situation for the worse, or whether she was effectively transferred.[5] Moreover, she did not specify what position she was being allegedly pressured to accept, explain in general terms why she was unqualified for the same, nor stated when or how the Mayor exerted such "pressure." As a result, we still hold that these allegations are insufficient to show that Plaintiff suffered an adverse employment action.

Similarly, Plaintiff's allegations regarding her co-workers actions remain insufficient. As stated previously, courts have distinguished between rudeness and ostracism, on one side of the spectrum, and pervasive harassment on the other, finding that rudeness or ostracism, by itself, is insufficient to support a hostile work environment claim and that severe or pervasive harassment is actionable. <u>Noviello v. City of Boston</u>, 398 F.3d 76, 89 (1st Cir. 2005). For purposes of a Title VII retaliation claim, menacing looks, name calling, exclusion from meetings, or being shunned by co-workers does not constitute an adverse employment action. <u>Davis v. Verizon Wireless</u>, 389 F. Supp. 2d 458 (W.D.N.Y. 2005). While verbal abuse might at times be sufficiently severe and chronic to constitute an adverse employment action, such behavior, without more, hardly rises to the level of actionable retaliation. <u>Brennan v. City of White Plains</u>, 67 F. Supp. 2d 362, 374 (S.D.N.Y. 1999). Clearly, the very act of filing a charge against a coworker will invariably cause tension and result in a less agreeable workplace, since the target

---

[5] It seems that Plaintiff still works at the Police Department whereas Correa resigned as Chief.

**CIVIL NO. 10-1293 (SEC)**                                                                 Page 10

of the complaint likely will have coworker-friends who come to his defense, while other coworkers will seek to steer clear of trouble by avoiding both parties. Noviello, 398 F.3d at 93. However, albeit unpleasant, "such behavior should not be seen as contributing to a retaliatory hostile work environment." Id.

We reiterate our finding that the complaint does not show that Plaintiff was submitted to a "steady stream of abuse" sufficient to amount to a retaliatory hostile work environment under Title VII. Especially considering that Plaintiff did not identify the names and specific instances when these alleged incidents occurred, or who she allegedly informed about the same, which also fails to satisfy Iqbal's requirements, and makes it impossible to determine the severity and nature of the alleged comments.

Lastly, we are unpersuaded by Plaintiff's argument that the "sham investigation" and hearing conducted by the Municipality were designed to disguise the retaliation against her, and constitute "an adverse employment capable of dissuading [her] from filing a sexual harassment complaint [] or any other protected activity." Docket # 42, p. 15. Clearly, the investigation and subsequent hearing were held in response to Plaintiff's complaints of sexual harassment, and not in retaliation for the same. If Plaintiff believed her procedural due process rights were not properly safeguarded, she should have exhausted the appropriate internal and administrative appeals process.[6] Therefore, Plaintiff's request for reconsideration on these issues is **DENIED**.

Notwithstanding, this Court will grant Plaintiff's request to amend the complaint as to the "persecution" allegations. Generally, "Rule 15(a) governs a motion to amend a complaint." Fisher v. Kadant, Inc., 589 F.3d 505, 509-511 (1st Cir. 2009). Under said rule, "[t]he court should freely give leave [to amend] when justice so requires." Thus when a motion to amend is entered before formal entry of judgment, the district court should evaluate the motion under the liberal standard of rule 15(a). Torres-Alamo v. Puerto Rico, 502 F.3d 20, 25-26 (1st Cir. 2007)

---

[6] Plaintiff does not set allege due process violations in the complaint.

(citing Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006)). Under this standard, "[a]mendments may be permitted pre-judgment, even after a dismissal for failure to state a claim, and leave to amend is 'freely given when justice so requires.'" Id. (quoting Rule 15(a)). Nevertheless, the First Circuit has held that when a "motion to amend is filed after the entry of judgment, the district court lacks authority to consider the motion under Rule 15(a) unless and until the judgment is set aside." Fisher, 589 F.3d at 508. Accordingly, "as long as the judgment remains in effect, Rule 15(a) is inapposite." Id. at 508-509.

In Palmer, 465 F.3d at, the plaintiff requested leave to amend only after the district court dismissed her complaint. There, the First Circuit stated that requests for leave to amend made subsequent to the entry of judgment, "whatever their merit, cannot be allowed unless and until the judgment is vacated ..." Palmer, 465 F.3d at 30. Consequently, a district court lacks "authority to entertain the motion to amend under the aegis of Rule 15(a) without first setting aside the judgment under some rule geared to the accomplishment of that task, say, Rule 59(e) or Rule 60(b)." Fisher, 589 F.3d at 509.

In explaining its reasoning, the First Circuit noted that "to require the district court to permit amendment here would allow plaintiffs to pursue a case to judgment and then, if they lose, to reopen the case by amending their complaint to take account of the court's decision." Fisher, 589 F.3d at 509 (citing James v. Watt, 716 F.2d 71 (1st Cir. 1983). The Court further reasoned that "[s]uch a practice would dramatically undermine the ordinary rules governing the finality of judicial decisions, and should not be sanctioned in the absence of compelling circumstances." Id.[7]

---

[7] Even a "passing request for contingent leave to file an amended complaint, made in an opposition to a motion to dismiss, is insufficient, in and of itself, to bring a post-judgment motion for reconsideration within the orbit of Rule 15(a)." Fisher, 589 F.3d at 510-511. Instead, a ruling on a motion to dismiss which includes a contingent request for leave to amend the complaint must be evaluated under the more stringent requirements that apply to motions for relief from judgment. Id. at 511. Therefore, the legal standard employed in adjudicating a a request for leave to amend filed after

**CIVIL NO. 10-1293 (SEC)**                                                                 Page 12

In opposing the Municipality's motion to dismiss, Plaintiff opted to oppose the motion arguing that the complaint stated enough facts to withstand dismissal instead of seeking leave to amend the same in order to cure any factual deficiencies and conform it to the more demanding pleading standards set forth in *Iqbal*. See Perea v. Pereira, No. 09-1156, slip op. at 10 (D.P.R. Jan. 29, 2010). This Court, however, notes that in contrast with the above cited cases, we entered a partial judgment dismissing only the retaliation claims. That is, the case continues against all defendants as to the harassment claims and it is still at its early stages. Moreover, Plaintiff was diligent in seeking reconsideration and moving to amend the complaint, and the Municipality did not adequately oppose said request. In *Torres-Alamo*, the First Circuit held that amendments may be permitted "even after a dismissal for failure to state a claim," which allows the interpretation that a court may allow an amendment to the complaint at this juncture absent undue delay and prejudice to the defendants. More so when the requested amendment is not futile insofar as courts have recognized that placing an employee under constant surveillance could be evidence of retaliation. Fercello v. County of Ramsey, 612 F.3d 1069, 1081 (8th Cir. 2010).

Considering the above, Plaintiff's request to amend the complaint to include specific averments as to the alleged persecution by Correa is **GRANTED**.

**Conclusion**

In light of the above, both parties' motions for reconsideration are **GRANTED in part and DENIED in part.** Plaintiff's amended complaint as allowed herein is due no later than **April 4, 2011.** Defendants may file a renewed motion to dismiss exclusively as to this issue no later than **April 14, 2011.** The case's deadlines as set forth in the Case Management Order as amended as follows: Case Management and Settlement Conference is RE-SET for July 14, 2011 at 2:30pm; Joint Case Management Memorandum and Rule 26 Meeting Report due by

---

the entry of judgment remains those provided by Rule 59(e) and Rule 60, and not Rule 15. Id.

**4/29/2011;** Discovery due by **7/5/2011**; Motions for Summary Judgment due by **8/5/2011**; Joint Proposed Pretrial Order due by **9/6/2011**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 24th day of March, 2011.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge